

IN THE UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF VIRGINIA

Alexandria Division

| | |
|---|---|
| UNITED STATES OF AMERICA ) | |
| ) | |
| v. ) | |
| ) | CRIMINAL NO. 1:11cr165 |
| PAUL ALLEN ) | |
| ) | |
| Defendant. ) | |

## CRIMINAL INFORMATION

THE UNITED STATES CHARGES THAT:

### Count 1
(Conspiracy to Commit Bank Fraud, Wire Fraud and Securities Fraud)

1. From in or about 2005 through in or about August 2009, in the Eastern District of Virginia and elsewhere, the defendant

### PAUL ALLEN

did knowingly and intentionally combine, conspire, confederate, and agree with others known and unknown to commit certain offenses against the United States, namely:

    a. bank fraud, that is, to knowingly and intentionally execute a scheme and artifice to defraud a financial institution, and to obtain any of the moneys, funds, credits, assets, securities, and other property owned by, and under the custody and control of, a financial institution, by means of materially false and fraudulent pretenses, representations, and promises, in violation of Title 18, United States Code, § 1344;

      b.    wire fraud, that is, having intentionally devised and intending to devise a scheme and artifice to defraud a financial institution, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, to knowingly transmit and cause to be transmitted, by means of wire communication in interstate commerce, writings, signs, signals, pictures, and sounds for the purpose of executing such scheme and artifice, in violation of Title 18, United States Code, § 1343; and

      c.    securities fraud, that is, to knowingly and intentionally execute a scheme and artifice to defraud any person in connection with any security of an issuer with a class of securities registered under § 12 of the Securities Exchange Act of 1934 (Title 15, United States Code, § 78l), in violation of Title 18, United States Code, § 1348.

    2.    Among the manner and means by which defendant ALLEN and others would and did carry out the conspiracy included, but were not limited to, the following:

      a.    A co-conspirator tracked and reported to ALLEN the size of a collateral deficit ("hole") in Ocala Funding.

      b.    In an effort to cover up the hole, ALLEN told a TBW co-conspirator to produce reports that concealed the shortfall and that were sent to Ocala Funding investors.

      c.    In or around 2008, a co-conspirator told ALLEN that the co-conspirator had moved the hole from Ocala Funding to Colonial Bank.

      d.    Allen learned that part of the reason for the hole was that co-conspirators at TBW misappropriated funds from Ocala Funding bank accounts and used the money for non-Ocala Funding purposes.

  e. After TBW undertook to lead Colonial BancGroup's effort to raise $300 million in private equity in order to receive over $550 million in funds from the government's Troubled Asset Relief Program ("TARP"), a co-conspirator informed ALLEN that TBW would list a private equity investor as a $50 million investor in the Capital Raise despite the fact that the co-conspirator and ALLEN knew that the private equity investor was unable to invest.

  f. ALLEN and co-conspirators subsequently submitted materially false information to the FDIC in furtherance of Colonial BancGroup's application for Troubled Asset Relief Program funds.

 3. In furtherance of the conspiracy and to effect the objects thereof, ALLEN and other co-conspirators committed or caused others to commit the following overt act, among others, in the Eastern District of Virginia and elsewhere:

  a. On or about May 15, 2008, a co-conspirator sent by email from TBW in Ocala Florida, to ALLEN in the Eastern District of Virginia, and to investors and other third parties, an Ocala Funding Facility report that inflated the assets reportedly held in Ocala Funding by approximately $680 million.

  b. On or about April 1, 2009, at the direction of a co-conspirator, ALLEN called the private equity investor who was unable to invest in the Capital Raise and suggested ways in which the investor could act as a straw investor with TBW providing the necessary investment money.

(All in violation of Title 18, United States Code, § 371.)

Count 2
(False Statements)

4. On or about July 6, 2009, in the Eastern District of Virginia, PAUL ALLEN sent to Ginnie Mae, a wholly-owned government corporation within the U.S. Department of Housing and Urban Development, a letter in which ALLEN knowingly and intentionally omitted material facts related to the delay in TBW's submission of audited financial statements, as required by the Guaranty Agreement between TBW and Ginnie Mae.

(In violation of 18 U.S.C. § 1001)

DENIS J. MCINERNEY
Chief, Fraud Section
Criminal Division
United States Department of Justice

By: _____
Patrick F. Stokes
Deputy Chief
Robert A. Zink
Trial Attorney

NEIL H. MACBRIDE
United States Attorney

By: _____
Charles F. Connolly
Paul J. Nathanson
Assistant United States Attorneys

4